UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
UNITED STATES OF AMERICA,

                -against-

EDUARD MUNTEANU,

                Defendant.
---------------------------------------------------------------X

**ORDER**
12-CR-698 (SJF)

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★ JUN 12 2013 ★

LONG ISLAND OFFICE

FEUERSTEIN, J.

Pending before the Court is a motion by defendant Eduard Munteanu ("defendant") seeking to: (1) suppress self-incriminating statements made by him to law enforcement agents on the grounds that he was subjected to custodial interrogation without being provided warnings in compliance with Miranda v. Arizona, 384 U.S. 436 (1966); (2) suppress contraband seized pursuant to the execution of a search warrant that was allegedly obtained upon the basis of an affidavit containing a material falsehood; and (3) compel the government's disclosure of evidence of other crimes, wrongs or acts that it intends to use at trial pursuant to Rule 404(b) of the Federal Rules of Evidence ("Rule 404(b)"). [Docket Entry No. 25]. In the alternative, defendant requests a pretrial evidentiary hearing to determine the admissibility of the contraband and the self-incriminating statements. Id. For the reasons that follow, the motion to suppress the contraband seized pursuant to the search warrant is denied; the motion to compel disclosure of evidence pursuant to Rule 404(b) is denied without prejudice to renewal at a later date; and **an evidentiary hearing will be held on July 10, 2013 at 11:15 a.m.** to determine whether the government obtained defendant's self-incriminating statements in violation of Miranda.

1

I. Background

    A.  Investigation and Search

Special Agents and Task Force Officers ("agents") of the Drug Enforcement Agency ("DEA") investigating a narcotics trafficking organization learned from an individual (a "cooperating witness") that on or about October 13, 2011, defendant brought approximately two (2) kilograms of cocaine from St. Maarten to Puerto Rico. Affidavit of Robert Stueber in Support of Application for Search Warrant [Docket Entry No. 25-2] ("Stueber Aff.") at ¶ 5.[1] According to the cooperating witness, one (1) kilogram of the cocaine was strapped to a courier's groin, which was discovered by an agent of the United States Border Patrol during a traffic stop. Id.[2] Defendant was arrested, but because there was no basis for the traffic stop, the charges against him were dismissed and he was released. Government's Memorandum of Law in Opposition to Defendant's Omnibus Motion [Docket Entry No. 25-2] ("Gov. Memo.") at 3.[3]

After his arrest and release, defendant exchanged multiple telephone calls, using a particular mobile phone (the "mobile phone"), with the cooperating witness to discuss narcotics trafficking. Stueber Aff. at ¶ 6. In a telephone call on or about September 30, 2012, defendant told the cooperating witness that he was in possession of two (2) to three (3) kilograms of

---

[1] According to the government, "[i]nformation provided by [the cooperating witness] has proven to be reliable and has been corroborated by other sources, including the analysis of toll records, consensually recorded phone calls, and information provided by other individuals familiar with the defendant that corroborated [the cooperating witness's] information regarding the defendant's drug trafficking." Government's Memorandum of Law in Opposition to Defendant's Omnibus Motion [Docket Entry no. 25-2] at 2 n.1.

[2] The United States Border Patrol later confirmed the details of the arrest. Stueber Aff. at ¶ 5.

[3] It is not clear from the Stueber Affidavit that both defendant and the courier were arrested during this incident. See Stueber Aff. ¶ 5. However, the government's brief in opposition to the pending motion states explicitly that defendant was in fact arrested.

2

cocaine and planned to travel from Miami, Florida to New York, and requested that the cooperating witness help him distribute the cocaine. Id. On October 1, 2012, United States Magistrate Judge Arlene R. Lindsay authorized the disclosure to the government of location data from the mobile phone. Id. On October 2, 2012, defendant called the cooperating witness from the mobile phone and told him that he was in Long Island and wanted to sell two (2) kilograms of cocaine. Id. On the same day, the cooperating witness met defendant, who was driving a rented car, under DEA surveillance, and defendant asked the cooperating witness if he could find a buyer for the cocaine. Id. When the cooperating witness asked to see the cocaine, defendant stated that he had left it in his hotel room. Id.

After the meeting, defendant returned the rental car and picked up a 2012 BMW convertible coupe, New York registration FLR 9827, which was registered in his name. Id. at ¶ 7. Using further surveillance and the location data from the mobile phone, DEA agents determined that the mobile phone was located at the Crown Plaza Hotel on 1730 North Ocean Avenue in Holtsville, New York. Id. The DEA agents confirmed that the BMW registered in defendant's name was located in the hotel parking lot. Id.

The agents saw defendant walking from the hotel to his BMW at approximately 4:20 p.m. and arrested him upon the basis of two (2) outstanding Suffolk County arrest warrants. Id. The mobile phone and a room pass key were found in defendant's possession. Id. Detective Robert Stueber ("Det. Stueber") was in Central Islip with Assistant United States Attorney ("AUSA") Charles N. Rose preparing the affidavit to be submitted in support of the application for a search warrant for the hotel room and was notified of the arrest by the agents. Det. Stueber asked the agents to determine the number of defendant's hotel room so that it could be included in the warrant application. Id. at 6. At approximately 4:25 p.m., a hotel employee at the front desk told

3

DEA Detective Sergeant Andrew Nimmo ("Det. Nimmo") that Room 300 was registered to defendant, and Det. Nimmo called Det. Stueber and advised him of the room number for inclusion in the warrant application. Id. The warrant application was provided to Magistrate Judge Lindsay's chambers at approximately 4:41 p.m. Id.

Unbeknownst to Det. Stueber at the time the application was submitted, the hotel employee also told Sergeant Nimmo that defendant might have had a female companion with him at the hotel. Id. Concerned that a coconspirator might have become aware of defendant's arrest and would attempt to dispose of any contraband, Det. Nimmo and Detective Frank Cabra entered Room 300 to confirm that no one else was in the room. Id. at 6-7. According to the government, "[t]he detectives did not see any contraband in plain sight upon entry[,] [] limited their search to only such areas of the room where an adult could possibly hide," and "did not search the defendant's luggage, which was located on the bed." Id. at 7. Det. Stueber did not state in his affidavit submitted with the warrant application that the detectives had conducted a warrantless search of the hotel room.

At approximately 5:15 p.m., Det. Stueber appeared before Magistrate Judge Lindsay and signed the affidavit in support of the search warrant application, and Magistrate Judge Lindsay authorized the search. Id. At approximately 5:18 p.m., Det. Stueber contacted the DEA agents at the scene and told them to conduct a comprehensive search of the room. Id. Upon a search of defendant's luggage in the hotel room, the DEA agents found four (4) packages containing approximately two hundred fifty (250) grams of a compressed whitish powder. Id. at 7-8. A field test of one (1) of the packages was positive for the presence of cocaine. Id. at 8.

    B.    Interrogation

According to the government, defendant was taken to the federal courthouse in Central

4

Islip after his arrest, and at approximately 5:45 p.m. Det. Stueber (in front of two (2) other DEA agents) advised him of his Miranda rights. Id. at 8. Defendant refused to waive his rights, and Det. Stueber indicated on the waiver form that defendant "[r]efused to sign and wanted to call Attorney William Keahon." Id. at Ex. 3. At approximately 6:00 p.m., Det. Stueber called William Keahon, Esq., and gave the phone to defendant. Id. at 8. Defendant gave the phone back to Det. Stueber to tell Mr. Keahon the circumstances of defendant's arrest, and Det. Stueber told Mr. Keahon that defendant was in possession of approximately one (1) kilogram of cocaine and then gave the phone back to defendant. Id. at 8-9. After the call, defendant told Det. Stueber that Mr. Keahon had advised him to cooperate but that he was reluctant to do so. Id. at 9. Due to defendant's expressed reluctance, Det. Stueber ended the conversation and did not ask defendant any questions. Id.

At approximately 8:50 p.m., Det. Stueber transported defendant to the Third Precinct Headquarters of the Suffolk County Police Department in Bay Shore. Id. According to the government, "[u]pon his arrival at the Third Precinct, [] defendant initiated a conversation with Det. Stueber and asked, in sum and substance, if he would be able to get out of jail that evening if he cooperated." Id. Det. Stueber stated that he would not get out of jail that evening but if he cooperated he might be released on bail to work proactively for the DEA. Id. Defendant then stated, in the presence of Det. Stueber and other DEA agents, that he wanted to cooperate and said, "I have people coming out from New Jersey to buy the coke. My baby's mother Tina is bringing them out. They should be out here right now." Id. The defendant further stated, "There is only one brick. That's all I brought up here with me." Id. at 9-10. Det. Stueber asked defendant to unlock the mobile phone so that he could see communications between defendant and his coconspirators, but defendant refused. Id. at 10. Det. Stueber stopped speaking to

5

defendant due to his refusal to cooperate. Id.

Defendant asserts that he was interrogated by agents after his arrest but "was never advised of [his] Miranda rights." Affidavit of Eduard Munteanu [Docket Entry No. 25-1] at ¶ 5.

On November 8, 2012, a grand jury handed up an indictment charging defendant with one (1) count of possession with intent to distribute five hundred (500) grams or more of a substance containing cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii)(II) and 18 U.S.C. §§ 3551, et seq. [Docket Entry No. 11].

II. Discussion

    A. Search Warrant

"A defendant is permitted to challenge the veracity of a search warrant in limited circumstances. One such circumstance is where the affidavit in support of the search warrant is alleged to contain deliberately or recklessly false or misleading information." United States v. Canfield, 212 F.3d 713, 717 (2d Cir. 2000). "To suppress evidence obtained pursuant to an affidavit containing erroneous information, the defendant must show that: '(1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause finding.'" Id. at 717-18 (alteration in original) (quoting United States v. Salameh, 152 F.3d 88, 113 (2d Cir. 1998)); see also Franks v. Delaware, 438 U.S. 154, 155-56 (1978) ("[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's

request."). [4]

"To determine if the false information was necessary to the issuing judge's probable cause determination, i.e., material, a court should disregard the allegedly false statements and determine whether the remaining portions of the affidavit would support probable cause to issue the warrant. If the corrected affidavit supports probable cause, the inaccuracies were not material to the probable cause determination and suppression is inappropriate." Canfield, 212 F.3d at 718 (internal quotation marks and citations omitted). In other words, if, "after putting aside erroneous information and material omissions, 'there remains a residue of independent and lawful information sufficient to support probable cause,'" then the evidence should not be suppressed. Id. (quoting United States v. Ferguson, 758 F.2d 843, 849 (2d Cir. 1985)); see also Franks, 438 U.S. at 156 ("[If,] with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.").

According to defendant, "federal agents conducted an unauthorized search of hotel room 300 prior to the issuance of the search warrant. After conducting the search (likely now realizing that the effort to procure the search warrant would be fruitful), agents traveled to the Federal Courthouse and presented an affidavit to Magistrate Judge Arlene Lindsay," in which "there is no mention of the fact that Room 300 had already been searched without the warrant—a material omission that renders the warrant defective." Affirmation of Kevin J. Keating in Support of

---

[4] Given the disposition of this application, it is not necessary for the Court to determine whether defendant can demonstrate here that the omission from the affidavit was deliberate or reckless. However, the Court notes that defendant has made no showing that Det. Stueber knew at the time he signed his affidavit that DEA agents on the scene had conducted a warrantless search of the hotel room.

Defendant's Pre-Trial Motions [Docket Entry No. 25-1] ("Keating Aff.") at ¶ 9.

It is clear that Magistrate Judge Lindsay had a substantial basis for concluding that the DEA agents had probable cause to believe that the hotel room contained contraband or other evidence of a crime. See Illinois v. Gates, 462 U.S. 213, 238-39 (1983) ("The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place. . . . [T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.") (internal quotation marks and alteration omitted). The reliable information provided by the cooperating witness, along with direct observation of defendant and the monitoring of his telephone calls, raised a fair probability that defendant was engaged in drug trafficking. Furthermore, reliable information indicated that there was contraband in the hotel room, as defendant was present at the hotel, he told the cooperating witness that he left the cocaine at the hotel, and the hotel employee indicated that Room 300 was registered to defendant.

The failure of the warrant application to indicate that DEA agents made a warrantless protective search of the hotel room does not affect the foregoing basis for finding probable cause and would not have altered the probable cause analysis in any way. Therefore, the omission was immaterial to the probable cause determination, and because there was "independent and lawful information sufficient to support probable cause," Canfield, 212 F.3d at 717 (internal quotation marks omitted), there is no basis to suppress the evidence seized pursuant to the warrant. See, e.g., United States v. Coreas, 259 F. Supp.2d 218, 220 (E.D.N.Y. 2003) ("[E]ven assuming that the relevant statement was intentionally false, the affidavit, absent the statement, demonstrated probable cause to execute the warrant authorizing the search. The finding of probable cause,

even without the allegedly false statement, made a Franks hearing unnecessary.").

The government also argues that even if the omission was material and the warrantless search was illegal,[5] the evidence is admissible pursuant to the independent source doctrine. "The independent source doctrine permits the admission of otherwise excludable evidence where law enforcement officers obtain a valid search warrant based on 'sources [that are] wholly unconnected with the [unlawful] entry and [were] known to the agents well before the[ir] initial entry.'" United States v. Bonczek, 391 F. App'x 21, 24 (2d Cir. 2010) (alterations in original) (quoting Segura v. United States, 468 U.S. 796, 814 (1984)); see also United States v. Johnson, 994 F.2d 980, 987 (2d Cir. 1993) ("Courts have applied the independent source exception in cases where the police stumble upon evidence while engaging in an unlawful search or entry, but where there was an independent basis apart from the illegal entry to allow a warrant to issue."). To demonstrate its entitlement to this exception, the government must show that "(1) the warrant . . . [was] supported by probable cause derived from sources independent of the illegal entry; and (2) the decision to seek the warrant [was] not . . . prompted by information gleaned from the illegal conduct." Johnson, 994 F.2d at 987. Defendant argues that the agents decided to seek a search warrant only "after a determination was made during the unlawful search that the suitcase, in fact, contained contraband" and that a factual dispute therefore exists "as to whether the decision to seek the warrant was prompted by the illegal conduct." Reply Affirmation of Kevin J. Keating [Docket Entry No. 25] at ¶ 4.

---

[5] Defendant presumes in his motion that the warrantless search of the hotel room was illegal but fails to offer any legal support for this position. It is not apparent from the facts presented here that the search was illegal, see United States v. MacDonald, 916 F.2d 766, 769-70 (2d Cir. 1990) (noting that "the warrant requirement must yield in those situations where exigent circumstances demand that law enforcement agents act without delay" and holding that the "urgent need to prevent the possible loss of evidence" is a relevant factor in determining whether exigent circumstances exist), but given the disposition of the motion, it is not necessary for the Court to address the issue.

9

The Court finds that the decision to seek the search warrant here was not prompted by the warrantless search of the hotel room. The DEA agents had conducted an extensive investigation of defendant and prior to the warrantless entry had substantial, reliable information that he was planning to sell cocaine that was in his hotel room. The fact that the DEA agents placed defendant under arrest also indicates that they were concluding the investigation and that the application for the search warrant was imminent. Defendant's assertion that the government would not have sought a search warrant in these circumstances without first verifying that the cocaine was in the hotel room is without merit. Furthermore, the government has represented that the preparation of the warrant application commenced well before the warrantless entry (Det. Stueber met with AUSA Charles N. Rose in Central Islip at approximately 2:30 p.m. to prepare Det. Stueber's affidavit in support of the application), and defendant has failed to offer any reason for the Court to doubt the veracity of these representations. Therefore, the warrantless search, even if it was illegal, "did not result in the government obtaining evidence it would not otherwise have obtained," and the independent source exception applies. Johnson, 994 F.2d at 987 (applying the independent source exception to warrantless review of tapes seized from the defendant where "the agents would have and could have applied for and been issued a warrant to listen to the tapes regardless of their prior review").[6]

B. Miranda Warning

Defendant argues that a "pre-trial evidentiary hearing is required to determine whether, prior to the commencement of [defendant's] custodial interrogation, agents advised [defendant]

---

[6] The Court declines to address the government's argument that the evidence may also be admitted under the inevitable discovery doctrine. See United States v. Eng, 997 F.2d 987, 990 (2d Cir. 1993) ("The inevitable discovery doctrine is an exception to the exclusionary rule and allows unlawfully obtained evidence to be admitted at trial if the government can 'establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means.'") (quoting Nix v. Williams, 467 U.S. 431, 444 (1984)).

of his Miranda warnings." Keating Aff. at ¶ 14. The government asserts that agents provided defendant with his Miranda rights, which he initially refused to waive (as evidenced by the waiver form submitted by the government), and that "[t]he incriminating statements the government intends to use as evidence at trial were made after the defendant voluntarily initiated conversation with Det. Stueber upon their arrival at the Third Precinct for overnight lodging" and after defendant was provided access to counsel. Gov. Memo. at 22-23. The government argues that "so long as the court determines that the defendant was initially provided his Miranda rights, provided counsel, and later knowingly and voluntarily waived those rights by initiating a conversation with Det. Stueber in order to attempt to cooperate with the government, the court should deny the defendant's motion to suppress his statements." Gov. Memo. at 23. Therefore, there is a factual dispute as to whether Det. Stueber provided defendant with Miranda warnings, and a hearing on the issue is required. Accordingly, a hearing will be held on July 10, 2013 at 11:15 a.m. to determine whether defendant was provided with his Miranda warnings and whether his self-incriminating statements are admissible at trial.

    C.    Disclosure of Evidence

Rule 404(b) of the Federal Rules of Evidence provides that the government must, "before trial—or during trial if the court, for good cause, excuses lack of pretrial notice," "provide reasonable notice of the general nature of any [evidence of other crimes, wrongs, or acts] that the prosecutor intends to offer at trial." FED. R. EVID. 404(b). Defendant's request that the Court order the government to disclose such evidence "at least 30 days prior to trial" is premature. No trial date has been set and, as defendant notes in his brief, courts have permitted disclosure as late as ten (10) days prior to trial. Keating Aff. at ¶ 16 (citing United States v. Ping, No. 96 CR. 118, 1996 WL 262999, at *2 (S.D.N.Y. May 17, 1996) (ordering that Rule 404(b) evidence be

11

disclosed ten (10) days prior to trial). Defendant has failed to offer any reason for the Court to set a deadline for disclosure at this time.

Defendant has also requested that the Court order the government to "furnish [defendant] with written notice of any character evidence and prior convictions [that] [it] intend[s] to use for impeachment purposes" pursuant to Rules 608 and 609 of the Federal Rules of Evidence. Keating Aff. at ¶ 17. The government has responded that it "already provided the defendant with a copy of his criminal history in its initial Rule 16 disclosures" and that "[a]ny additional disclosures will be made in a reasonably timely manner." Gov. Memo. at 24. Defendant has again failed to offer any basis for the Court to require additional disclosures at this time.

III. Conclusion

For the foregoing reasons, the motion to suppress evidence seized from the hotel room is denied, and the motion for disclosure of evidence is denied without prejudice to renewal at a later date. The Court will hold an evidentiary hearing to determine whether defendant was provided with <u>Miranda</u> warnings on July 10, 2013 at 11:15 a.m.

**SO ORDERED.**

s/ Sandra J. Feuerstein

SANDRA J. FEUERSTEIN
United States District Judge

Dated: June 12, 2013
Central Islip, New York