UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,

              -against-

EDUARD MUNTEANU,

              Defendant.
-----------------------------------------------------------X

**ORDER**
12-CR-698 (SJF)

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★  JUL 24 2013  ★

LONG ISLAND OFFICE

FEUERSTEIN, J.

On November 8, 2012, a grand jury indicted charging Eduard Munteanu ("defendant") with one (1) count of possession with intent to distribute five hundred (500) grams or more of a substance containing cocaine. [Docket Entry No. 11]. On June 4, 2013, defendant filed a motion seeking to: (1) suppress a statement made by him to law enforcement agents on the ground that the statement was obtained in violation of <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966); (2) suppress contraband seized pursuant to the execution of a search warrant that was allegedly obtained upon the basis of an affidavit containing a material falsehood; and (3) compel the government's disclosure of evidence of other crimes, wrongs or acts that it intends to use at trial pursuant to Rule 404(b) of the Federal Rules of Evidence ("Rule 404(b)"). [Docket Entry No. 25]. On June 12, 2013, the Court denied plaintiff's applications to suppress the contraband and to compel the government to disclose additional evidence and scheduled a hearing to determine the admissibility of the statement. [Docket Entry No. 27].[1] The hearing was held on July 10, 2013. For the reasons that follow, the Court finds that the statement was not obtained in

---

[1] Defendant has filed a motion for reconsideration of the denial of his application to suppress the contraband. [Docket Entry No. 28].

1

violation of Miranda v. Arizona, supra.

I.      The Hearing

Detective Robert Steuber was the sole witness. A Suffolk County Police Officer for twenty-four (24) years, and a member of the Drug Enforcement Agency ("DEA") Task Force from 2009 to 2013, he testified that on October 2, 2012 the defendant was arrested by Task Force Officers Riley, Nimono and Bornstein.

Detective Steuber was in DEA headquarters when he received notification of the arrest and advised the Task Force Officers to bring the defendant to DEA headquarters. At 5:45 p.m. he made an identification of defendant based upon his prior surveillance of defendant in connection with this case. Special Agent David Campbell and Task Force Officer Jeff Pollitiere were also present. According to notes of Special Agent Campbell, defendant had refused food but accepted water at 5:40 p.m. (Govt's Ex. 2).

Detective Steuber proceeded to do initial paperwork and advised defendant of his Miranda rights by reading verbatim from a printed card. (Govt's Ex. 1). He then asked defendant to initial and sign the card from which he had been read the rights. Defendant declined to do so, stating that he wanted to speak to an attorney before he signed or wrote anything. Detective Steuber wrote "refused to sign" on the card. Defendant was asked the name of his attorney and a telephone call was placed to that attorney, William Keahon.

Agent Campbell dialed the attorney's telephone number and defendant spoke with the attorney for between two (2) and five (5) minutes. Detective Steuber then spoke to the attorney and explained the circumstances of the arrest after which the attorney again spoke with defendant.

Defendant, upon hanging up the phone, stated that his attorney had told him to cooperate,

but that defendant "did not think it was the right thing to do right now."

Following the completion of the paperwork, Detective Steuber transported defendant to the 3rd Precinct at approximately 9:00 p.m. Defendant was handcuffed and seated in the front passenger seat.

Upon arriving at the Precinct, where defendant was to be housed overnight, defendant asked Detective Steuber in the parking lot whether "if he was asked questions and cooperated, would he be able to go home that night."

Detective Steuber responded, "No, absolutely no way you can go home tonight." Defendant then asked if there was anything he could do to go home that night. Detective Steuber testified: "I told him that the best thing I can do, if he cooperated, I could ask the prosecutor and perhaps there could be future cooperation down the road, but no way to go home tonight."

Defendant then made a spontaneous statement.

II. The Law

"The Government bears the burden of proving by a preponderance of evidence that a valid waiver [of Miranda rights] occurred." United States v. Murphy, 703 F.3d 182, 192 (2d Cir. 2012); see also Colorado v. Connelly, 479 U.S. 157, 168-69 (1986) ("Whenever the State bears the burden of proof in a motion to suppress a statement that the defendant claims was obtained in violation of our Miranda doctrine, the State need prove waiver only by a preponderance of the evidence."). "The waiver inquiry has two components: the accused's relinquishment of his rights must have been (1) 'knowing,' which is to say that the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it, and (2) 'voluntary,' which is to say that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." Murphy, 703 F.3d at 192

(internal quotation marks omitted).

III. Conclusions of Fact and Law

Detective Steuber's testimony was forthcoming and credible, despite the fact that he testified solely from memory, having taken no notes.

Defendant made a clear, conscious and knowing choice to speak, having previously declined to do so, as he found it to not to be "the right thing at that time," at DEA headquarters.

However, realizing that he was going to be detained at least overnight, he reconsidered his decision and decided to speak despite the fact that he would not be released in any event that night.

Moreover, the decision to speak was clearly voluntary. No question or questions had been posited; no coercion, deception or intimidation was employed. Detective Steuber responded to defendant's inquiries honestly, and defendant made a determination to make a statement, apparently based upon a reassessment of his situation.

Based upon the foregoing, the Court finds that the government has met its burden and defendant's motion to suppress the statement is denied.

**SO ORDERED.**

s/ Sandra J. Feuerstein
SANDRA J. FEUERSTEIN
United States District Judge

Dated: July 24, 2013
Central Islip, New York