# KEVIN J. KEATING
ATTORNEY AT LAW
666 OLD COUNTRY ROAD
SUITE 501
GARDEN CITY, NEW YORK 11530-2004
(516) 222-1099
Fax: (516) 683-8410

www.kevinkeatinglaw.com

KEVIN J. KEATING

Of Counsel
Stefani Goldin, Esq.

Paralegal
Colleen Fenton

MANHATTAN OFFICE:
40 WALL STREET
28TH FLOOR
NEW YORK, N.Y. 10007
(BY APPT. ONLY)

September 23, 2014

**VIA ECF**
Honorable Sandra J. Feuerstein
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

                Re:  *United States v. Munteanu*
                     Ind. CR12-0698

Dear Judge Feuerstein:

      As you are aware, I am attorney for Mr. Munteanu. I write in response to the government's in limine applications contained in their letter of September 19, 2014. Principally, despite the fact that the conspiracy charged in the instant indictment alleges an unambiguous, straightforward agreement to possess with intent to distribute cocaine, which is supported by evidence which includes the recovery of the contraband from the defendant's hotel room; his confession; cooperator testimony; and incriminating statements on consensual recordings, the government seeks to introduce evidence that, more than a year earlier, Munteanu allegedly was involved in a separate conspiracy to distribute marijuana, and a separate conspiracy to distribute cocaine. In doing so, the government argues, alternatively, that the evidence of prior trafficking is either direct evidence of the charged conspiracy because "it is inextricably intertwined with and necessary to complete the story of that offense," or it is Rule 404(b) evidence as it establishes Munteanu's knowledge, intent, motive and plan in the instant offense. The government is wrong, and their attempts to overwhelm the trial jury with uncharged criminal conduct in this straightforward case should be rejected.

## The Instant Indictment

      By "federal standards," the instant superseding indictment is unusually straightforward. And, the evidence against Munteanu appears nearly overwhelming.

      The superseding indictment contains merely two counts, alleging a single event. It charges Munteanu with possessing more than 500 grams of cocaine on October 2, 2012, and his

To: Hon. Sandra Feuerstein
Date: September 23, 2014
Page 2

conspiracy to distribute it. A review of the discovery materials and case evidence reveals a simple set of facts seemingly supported by a wealth of evidence. Specifically, the government alleges that in the weeks preceding October 2, 2012, Munteanu traveled to St. Maarten at which time he purchased cocaine which he provided to two women who acted as couriers in transporting the contraband back to the United States. Munteanu then traveled from Florida with the cocaine and brought it to a hotel on Long Island. Once on Long Island, it is alleged that Munteanu spoke to several individuals about purchasing the cocaine.

By way of evidence, at trial, the government will introduce the following: (1) testimony from law enforcement who observed Munteanu at the hotel on October 2, 2012, and the recovery of 1 kilo of cocaine from the hotel room he registered; (2) Munteanu's confession, including a statement that he was going to sell the cocaine; (3) cooperator testimony from an individual who traveled with Munteanu to St. Maarten; (4) cooperator testimony from an individual who was planning to purchase the cocaine from Munteanu on October 2, 2012; (5) cooperator testimony from an co-conspirator who was recording Munteanu during the charged conspiracy; (6) consensual recordings wherein Munteanu speaks of the Caribbean trip and the plans to sell the cocaine, and (7) documentary evidence corroborating the Caribbean trip.

In short, the allegations are simple, and the evidence against Munteanu is daunting.

Now, two years after Munteanu's October 2, 2012 arrest, and on the eve of trial, after choosing not to charge Munteanu in connection with other alleged narcotics conspiracies, the government nevertheless seeks to introduce this separate uncharged alleged conduct. In doing so, the government erroneously characterizes the conduct as "intertwined" with the instant charge, misapplies cited Second Circuit authority, and incorrectly characterizes the conduct as falling within the parameters of Rule 404(b) evidence. For these reasons, and as the introduction of these two other alleged conspiracies would transform this trial, and overwhelmingly prejudice Munteanu, the application should be denied.

## The Evidence Of Prior Narcotics Trafficking Is Not Direct Evidence Of The Instant Conspiracy

The government seeks to elicit testimony from cooperators of two alleged prior acts of narcotics trafficking. First, the government seeks to elicit testimony from CW-1 that from February to August, 2011 (more than a year before the commencement of the instant conduct), he and Munteanu traveled to California on five separate occasions and purchased marijuana for the purpose of re-selling it on Long Island. The scheme purportedly involved the purchase of nearly 130 kilograms of marijuana in California, its cross country transport, and subsequent sale on Long Island. The government notes that CW-1 became a confidential witness after being stopped by police in Ohio during the last cross country transport in August, 2011. (Robotti, p. 2, 3). And, the government seeks to elicit testimony from CW-2, that in 2011, she assisted the defendant with the sale of small amounts of the marijuana on Long Island. (Robotti, p. 5).

To:  Hon. Sandra Feuerstein
Date:  September 23, 2014
Page 3

  Next, the government seeks to elicit testimony from CW-1 that in October, 2011 (a year before the charged conduct), he and the defendant traveled to Puerto Rico and unsuccessfully attempted to transport 250 grams of cocaine back to the United States.  (Robotti, p. 4).  While the charges that were lodged against the defendant in connection with this event were ultimately dismissed upon motion of the prosecutor, the government also seeks to introduce a May 7, 2012 consensual call wherein the defendant advises that had he been found guilty of drug trafficking in Puerto Rico, he would have fled to Colombia.  (Robotti, p. 4).

  The government argues that these various alleged acts of narcotics trafficking, each of which concluded *prior* to the start date of the charged conspiracy is admissible as direct evidence of the charged conspiracy because it is "inextricably intertwined with and necessary to complete the story of that offense."  (Robotti, p. 2)  Then, they argue, variously, that it is direct evidence of "the nature of the defendant's relationship with CW-1, CW-2, and other co-conspirators"; … "it provides context for CW-1's decision to cooperate with the government and it demonstrates that the defendant continued to place significant trust in CW-1 after he started cooperating," … and "provides important background information for the charged conspiracy."  (Robotti, p. 5, 6)

  First, with regard to the contention that these earlier acts are "inextricably intertwined" with the charged conduct, the contention is transparently false.  The purported marijuana trafficking was a wholly separate event which concluded one year prior to the commencement of the charged conduct, and involved Munteanu traveling with CW-1 to California to purchase marijuana.  Conversely, the charged conduct involves Munteanu purportedly traveling to the Caribbean with others (not CW-1) to purchase cocaine.  And, the alleged failed effort to transport cocaine from Puerto Rico one year prior to the charged conduct was, likewise, a distinct event.

  In short, it is factually incorrect that the uncharged prior trafficking events are "inextricably intertwined" with the charged conduct.  And, the government's citation to <u>United States v. Carboni</u>, 204 F. 3d 39 (2d Cir. 2000), and <u>United States v. Gonzalez</u>, 110 F. 3d 936 (2d Cir. 1996), in support of this contention is misplaced.  In <u>Carboni</u>, the defendant was indicted in connection with a complex fraud involving making false statements wherein he pre-billed invoices in an effort to obtain a line of credit.  At trial, the court allowed the government to introduce evidence that the defendant had, additionally, added certain fictional inventory to the company's ledger, which allowed for the ongoing concealment of the wrong doing.  In short, the conduct was *a part of* the course of conduct alleged in the indictment.  In <u>Gonzalez</u>, the court permitted testimony of the defendant's commission of an uncharged attempted burglary which occurred *moments before* and a block away from the charged conduct (another burglary and firearms possession), as it provided obvious factual explanation as to the charged conduct which began with the defendants having been observed fleeing from the earlier event, possessing firearms.  (<u>id.</u> 942)

To: Hon. Sandra Feuerstein
Date: September 23, 2014
Page 4

Here, the facts are quite different as the purported marijuana conspiracy was a separate occurrence which concluded a year prior to the charged conduct. And, the alleged failed effort to transport cocaine from Puerto Rico one year prior to the charged conduct was, likewise, a distinct occurrence, not inextricably intertwined with the events alleged in the indictment.

Next, the government's contention that these earlier alleged acts of narcotics trafficking provides "context" for CW-1's decision to cooperate, and demonstrates that the defendant continued to "place trust" in CW-1, is similarly misplaced. First, CW-1's decision to cooperate resulted from his 2011 Ohio arrest for marijuana trafficking. Evidence of this simple fact can be readily introduced to the trial jury, who will not need "context" to understand CW-1's motivation and decision to cooperate. In short, the defendant's purported uncharged involvement in this earlier event, need not be introduced to the jury to provide context as to CW-1's decision to cooperate. Moreover, the government's claim that the earlier trafficking activities are necessary to provide evidence of the relationship of trust which existed between the defendant and CW-1 is similarly misplaced. Rule 16 discovery in this case includes a great number of consensual recordings between CW-1 and Munteanu. The government is well aware of the content of these recordings, which they will argue clearly reveal a friendly, long-standing, trusting relationship between the twosome. And, the recordings contain incriminating conversations between Munteanu and CW-1 with regard to the charged conduct. Put plainly, the relationship of trust between Munteanu and CW-1 appears to be a low hurdle for the government to clear in this case, which need not be bolstered by the inflammatory evidence of the defendant's purported involvement in prior uncharged narcotics activities with CW-1.

**The Prior Uncharged Acts Of Narcotics**
**Trafficking Are Not Admissible Under Rule 404(b)**

Alternatively, the government seeks to introduce the earlier alleged acts of trafficking under Rule 404(b), arguing that it provides evidence of the defendant's "knowledge and intent," "motive," and a "common plan or scheme." (Robotti, p. 6, 7)

It is well settled that evidence of the defendant's other acts is admissible under Rule 404(b), if relevant to an issue at trial, other than the defendant's character, and if its probative value is not substantially outweighed by the risk of unfair prejudice. United States v. Williams, 205 F.3d 23, 33 (2d Cir. 2000)

Here, with regard to the necessity of introducing the uncharged conduct to establish "knowledge and intent," as noted, the evidence against the defendant appears to be somewhat overwhelming. As indicated, the government is prepared to present evidence that, a kilo of cocaine was found in a hotel room registered to the defendant after being observed by law enforcement arriving at the hotel, and exiting the hotel; Munteanu confessed to possessing the cocaine with intent to sell it; three cooperators will testify that they were co-conspirators with Munteanu in the transportation of the cocaine from the Caribbean to Long Island with the

To:  Hon. Sandra Feuerstein
Date:  September 23, 2014
Page 5

ultimate intention of distributing it; consensual recordings containing Munteanu's voice confirm his involvement in the conspiracy, and documentary evidence confirms the co-conspirators traveled to the Caribbean, and Munteanu's return to the Long Island hotel.  With this, the prejudicial impact of evidence of earlier trafficking activities far outweighs any probative value of the uncharged events.

With regard to the government's "motive" argument, they argue that the defendant's alleged involvement in the earlier failed marijuana trafficking event which resulted in CW-1's arrest, triggered the defendant's need for money – his motive for engaging in the charged conduct.  In other words, the government seeks to introduce evidence of earlier narcotics trafficking in an effort to claim that he engaged in the charged conduct for money.  This argument is specious.  The motivation of a drug dealer *is money*.  In fact, the government will introduce evidence at trial that the cocaine in the charged event was purchased for $8,000.00 and was planned to be sold for $42,000.00.  It hardly warrants comment that the prejudicial impact of earlier uncharged acts of narcotic trafficking trumps the probative value of the evidence that the defendant was attempting to make money – a fact which is self evident, and appears already supported by the evidence.

Finally, the government's contention that the uncharged trafficking activities are admissible under Rule 404(b) as it is evidence of a "common scheme or plan," is, likewise, false. First, the purported marijuana conspiracy involves facts entirely distinct from the charged events. Next, the government's citation to United States v. Robinson, 635 F. 2d 981 (2d Cir. 1980) does not make the case.  In Robinson, the Court held that the District Court had properly admitted evidence under Rule 404(b) of the defendant's earlier participation in other narcotics operations, close in time and involving *identical methods*, to which he had earlier pleaded guilty, after a finding that the probative value outweighed the prejudicial effect.  Here, the facts of the earlier purported narcotics trafficking are not identical, and concluded more than a year earlier.  And, unlike in Robinson, Munteanu did not plead guilty to this event, instead it was dismissed.

**In Any Event, Under Rule 403, All Of The**
**Purported Uncharged Acts Should Be Precluded**

As noted, the evidence against Munteanu in this straightforward case appears quite significant.  With this, as outlined above, the probative value of the uncharged acts appears limited.  The prejudicial impact upon the defendant's ability to get a fair trial in this matter would be overwhelming should the government be permitted to introduce evidence of two uncharged narcotics trafficking conspiracies.  At the same time, of course, this trial would be transformed from the defense of a straightforward conspiracy, to the defense of three distinct trafficking events spanning years.

To: Hon. Sandra Feuerstein
Date: September 23, 2014
Page 6

For these reasons, under Rule 403, the government's application should, likewise, be denied.

**Conclusion**

As outlined herein, the two uncharged alleged acts of narcotics distribution, which concluded a year prior to the charged conspiracy, do not constitute direct evidence of the existence of the instant offense conduct. And, the conduct is not admissible under Rule 404(b). Finally, in any event, based upon the nature and quality of the evidence which is anticipated at trial, and the distinct nature of the uncharged events, under Rule 403, the Court should preclude the government from introducing evidence of the alleged earlier events.

Very Truly Yours,

KEVIN J. KEATING

cc: Michael P. Robotti, Esq.
    Assistant United States Attorney

    Clerk of the Court